**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 19bk32364 |
|    Cesar Sanchez, | ) | Chapter 7 |
| | ) | |
|           Debtor. | ) | Judge LaShonda A. Hunt |
| | ) | |
| | ) | |
| Royal Garden Produce, LLC, an | ) | |
| Arizona limited liability company, | ) | |
| | ) | |
|           Plaintiff, | ) | Adv. Proc. No. 20ap00063 |
| v. | ) | |
| | ) | |
| Cesar Sanchez, | ) | |
| | ) | |
|           Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Defendant/Debtor Cesar Sanchez ("Sanchez") owned and operated Sanchez Bros. Produce, LLC t/a Sanchez Bros. Wholesale Corporation (the "Company"). On behalf of the Company, Sanchez purchased and resold produce supplied by plaintiff Royal Garden Produce, LLC ("Royal Garden"). After the Company failed to pay several invoices for produce shipments, Royal Garden sued the Company and its principals (Sanchez and his brother) in federal district court under the Perishable and Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a-t. Then Sanchez filed this chapter 7 bankruptcy petition. Royal Garden eventually obtained a default judgment against all defendants except Sanchez. Nevertheless, Royal Garden alleges in this adversary proceeding that its liquidated PACA debt is non-dischargeable under 11 U.S.C. §§ 523(a)(4) and 523(a)(2)(A).

Sanchez denied the complaint allegations and subsequently moved for summary judgment on both claims. He contends that legally, no express trust exists to support a fiduciary relationship, and factually, Royal Garden cannot show that Sanchez fraudulently procured produce. Royal

1

Garden opposed the motion substantively and sought additional time to complete discovery on the question of intent. With the parties' consent, the court stayed consideration of the pending motion during discovery. Shortly thereafter, Sanchez's counsel was granted leave to withdraw from representing him. However, with the assistance of *pro bono* counsel,[1] Sanchez has been able to proceed with prosecution of his motion.

The parties now seek a ruling on the legal question of whether a PACA trust establishes fiduciary duties for purposes of the non-dischargeability analysis under section 523(a)(4). Upon consideration of the parties' briefs, the supplemental filings, and the applicable case law, the court concludes that it does not. Because this minority position more closely aligns with Seventh Circuit precedent, Sanchez's motion for partial summary judgment on the section 523(a)(4) claim will be granted.[2]

### BACKGROUND

The facts are drawn from the parties' statements of fact and responses under Local Bankruptcy Rules 7056-1 and 7056-2. No material facts are in dispute. Neither party contends that their dealings were not governed by PACA.

Sanchez served as an officer, director, or shareholder of the Company. As the company's manager and agent, he was listed as a principal on its PACA license. Sanchez and the Company engaged in the business of buying and selling produce in foreign and interstate commerce from their office in Illinois. In carrying out their distribution operations, the Company purchased produce from Royal Garden that included tomatillo, garlic, roma tomatoes, and broccoli.

---

[1] See https://www.ilnb.uscourts.gov/us-bankruptcy-court-volunteer-attorney-panel. The court expresses its sincere appreciation to attorney David Hernandez for his service to the bankruptcy court and the public.

[2] To the extent Sanchez still seeks summary judgment on the section 523(a)(2)(A) claim, that request will be denied without prejudice to renewal for the reasons stated in Section III of the Discussion, *infra*.

On several occasions in June and July 2019, Royal Garden submitted invoices totaling over $50,000 to the Company that were not paid in full.  After Royal Garden commenced suit in federal court against the Company and its principals for PACA violations, Sanchez filed for chapter 7 bankruptcy in November 2019.  A few months later, Royal Garden timely initiated this non-dischargeability proceeding alleging that Sanchez breached his fiduciary duties under PACA which resulted in defalcation pursuant to section 523(a)(4), and that Sanchez made false representations, acted under false pretenses, and/or engaged in actual fraud in his dealings with Royal Garden pursuant to section 523(a)(2)(A).  Pending before the court is Sanchez's summary judgment motion which Royal Garden has opposed.  As already explained, only one aspect of the section 523(a)(4) claim is ripe for resolution.

## JURISDICTION

The court has subject matter jurisdiction over this matter under 28 U.S.C. § 1334(b) and the district court's Internal Operating Procedure 15(a).  Actions seeking determinations about the dischargeability of particular debts are core proceedings.  28 U.S.C. § 157(b)(2)(I).

## DISCUSSION

### I.   Summary Judgment Standard

Summary judgment is appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a), made applicable by Fed. R. Bankr. P. 7056.  The parties agree on the material facts.  At issue here is whether the statutory trust scheme under PACA satisfies the express trust requirement necessary to impose a fiduciary duty under 11 U.S.C. § 523(a)(4).  This question has divided bankruptcy courts within this circuit, with some following the majority ruling that PACA trusts qualify, *see Strube Celery & Vegetable Co., Inc. v. Zois (In re Zois)*, 201 B.R. 501 (Bankr. N.D. Ill. 1996); *Michael Farms, Inc. v.*

3

*Lundgren (In re Lundgren)*, 503 B.R. 717 (Bankr. W.D. Wis. 2013), and others finding the minority view more persuasive, *see CR Adventures, LLC v. Hughes (In re Hughes)*, 609 B.R. 789 (Bankr. N.D. Ill 2019); *Quality Food Products Inc. v.* Bolanos, 475 B.R. 641 (Bankr. N.D. Ill. 2012) ("*Bolanos I*"), *rev'd Quality Food Products, Inc. v. Bolanos*, No. 12C7654, 2013 WL 7507846 (N.D. Ill. Sep. 16, 2013) "(*Bolanos II")*.  Whether a PACA trust falls within the narrow parameter of covered fiduciary relationships presents a question of law.  *See Cooper v. Wal-Mart Stores, Inc.*, 106 F.3d 1338, 1340 (7th Cir. 1997).  Thus, the issue is appropriate for resolution on summary judgment.  S*ee Local 1239 v. Allsteel, Inc.*, 9 F. Supp.2d 901, 902 (N.D. Ill 1998).

## II.     PACA Trusts under 11 U.S.C. § 523(a)(4)

### A.  Statutory Background

#### 1.  Section 523(a)(4)

Individual chapter 7 debtors are generally eligible to receive a discharge of their debts at the conclusion of their cases except as limited by section 523 of the Bankruptcy Code.  *See* 11 U.S.C. § 727.  Royal Garden contends that the exception to discharge in section 523(a)(4) applies here because a PACA judgment is statutorily deemed a debt for "fraud or defalcation while acting in a fiduciary capacity. . . ." 11 U.S.C. § 523(a)(4).   To prevail on that claim, the creditor "must show (1) that the debtor acted as a fiduciary to the creditor at the time the debt was created, and (2) that the debt was caused by fraud or defalcation."  *Follett Higher Education Group, Inc. v. Berman (In re Berman)*, 629 F.3d 761, 766 (7th Cir. 2011).

The existence of a fiduciary relationship is a question of federal law, *O'Shea v. Frain (In re Frain)*, 230 F.3d 1014, 1017 (7th Cir. 2000), that is interpreted "strict[ly] and narrow[ly]," *Berman*, 629 F.3d at 767 (citations omitted).  Indeed, the Seventh Circuit has recognized a

4

fiduciary relationship for purposes of section 523(a)(4) in two circumstances only: an express trust and an implied fiduciary relationship. *Id.* at 768.

An express trust involves "(1) a clear intent to create a trust and (2) the hallmarks of a trust." *Id*. at 769. Those hallmarks include "segregation of funds, management by financial intermediaries, and recognition that the entity in control of the assets has at most bare legal title to them." *Id. Accord In re McGee*, 353 F.3d 537, 540 (7th Cir. 2003). A covered fiduciary relationship "imposes real duties in advance of the breach." *Frain*, 230 F.3d at 1017 *quoting Matter of Marchiando*, 13 F.3d 1111, 1116 (7th Cir. 1994). That key fact distinguishes express trust relationships where fiduciary duties exist prior to the establishment of the debt from normal contractual relationships or other constructive trusts that have no existence before the wrong is committed. *Marchiando*, 13 F.3d at 1115; *Frain*, 230 F.3d at 1017.

Alternatively, an "implied fiduciary status" can arise where the relationship "involved a difference in knowledge or power giving one party a position of ascendancy over the another." *Marchiando*, 13 F.3d at 1116. These "relations of inequity . . . justify the imposition on the fiduciary to treat his principal's affairs with all the solicitude that he would accord to his own affairs." *Id.* That is because the relationship requires the "principal to repose a special confidence in the fiduciary." *Frain*, 230 F.3d at 1017.

Determining whether a specific relationship satisfies section 523(a)(4) is further complicated by the use of "trust" in an applicable statute. *McGee*, 353 F.3d at 540. The phrase itself is not determinative; rather courts typically look for a "trust-like relation" that suffices to establish a fiduciary relationship for purposes of section 523(a)(4). *See Marchiando*, 13 F.3d at 1116; *McGee*, 353 F.3d at 540.

For example, in *Marchiando*, the Seventh Circuit found that an Illinois statute that licensed a convenience store owner to sell lottery tickets and provided that the proceeds of sales of those tickets "shall constitute a trust fund until paid to the Department" did not create an express trust. *Marchiando*, 13 F.3d 1113–1116.  The court concluded that while the statute used language that indicated an interest or intent in creating a trust, the actual content of the law did not do so.  *Id.* at 1116.  Specifically, the court acknowledged that while the statute called for a trustee relationship that technically began when the debtor received her license to sell lottery tickets, in reality "the trust did not begin until she failed to remit ticket receipts." *Id.*  "Until then, she was just a ticket agent." *Id.*  And thus, "she had no duties of a fiduciary character toward the Department of Lottery or anything to anyone else." *Id.*

Significantly, the Seventh Circuit explained, the statute appeared to be established for the sole purpose of giving the state a lien on proceeds to secure its ability to collect amounts due from ticket agents. *Id.*  Absent from the kinds of relationships that provide a means to ensure collection on a transaction is the special confidence and trust that accompanies situations involving a person holding another's money for safekeeping. *Id.*  Since the fiduciary relationship did not *in fact* repose that heightened level of trust in the other party, the court rejected the state's section 523(a)(4) claim.

In contrast, in *McGee*, the Seventh Circuit found a Chicago Municipal Code provision that required a landlord to hold all tenant security deposits in a segregated bank account at a bank, savings and loan association or other financial association, with the funds belonging to the tenant, created a fiduciary relationship that provided a basis for finding non-dischargeability under section 523(a)(4).  353 F.3d at 539–40.  There, the statute was deemed to create a trust-like relationship between the landlord and the tenant because it required "segregation of funds, management by

6

financial intermediaries, and recognition that the entity in control of the assets had at most 'bare' legal title to them." *Id.* at 540. Those "real attributes, not the labels applied by the ordinance, bring into play a fiduciary obligation and thus [implicate] § 523(a)(4)." *Id.* With those guiding principles in mind, the court turns to the relevant statute.

### 2. Perishable Agricultural Commodities Act

PACA provides that:

> [p]erishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transaction has been received by such unpaid suppliers, sellers, or agents.

7 U.S.C. § 499e(c)(2). PACA was originally enacted in 1930 to provide some measure of control and regulation over an industry "in which the opportunities for sharp practices, irresponsible business conduct, and unfair methods are numerous." *Tom Lange Co., Inc. v. A. Gagliano., Inc.*, 61 F.3d 1305, 1307 (7th Cir. 1995) (*quoting* S. Rep. No. 2507, 8th Cong., 2d Sess. 3 (1956)). The purpose behind the statute was to "encourage fair trading practices in the marketing of perishable commodities by suppressing unfair and fraudulent business practices in marketing of fresh and frozen fruits and vegetables." H.R. REP. 98-543, at *3 (1983).

However, in 1984, Congress amended PACA by adding a trust provision "to protect unpaid produce suppliers and sellers in the case of bankruptcy." *Zois*, 201 B.R. at 508. "[B]ecause sellers of perishable commodities had a need to move their inventories quickly, they were often required to become unsecured creditors of their purchasers." *Nickey Gregory Co., LLC v. AgriCap, LLC*, 597 F.3d 591, 595 (4th Cir. 2010). Producers often found themselves unable to collect on their debts as purchasers "gave superior security interests to their lenders." *Id.* at 594–95. Thus, the

7

purpose behind the 1984 amendments was to give agricultural producers "a priority position over even secured creditors." *Id.* at 595.

To establish these protections for unpaid sellers against defaulting buyers, Congress acted "by adding a floating trust provision." *Spring Valley Produce, Inc. v. Forrest (In re Forrest)*, Case No.8:20-bk-03819-RCT, Adv. No. 8:20-AP-00447-RCT, 2021 WL 1784085 (Bankr. M.D. Fla. Apr. 2, 2021). This floating trust[3] is non-segregated, held for the benefit of the unpaid sellers who have met certain statutory requirements, and includes the "buyer's produce, products derived from that produce, and the proceeds gained therefrom." *Idahoan Fresh v. Advantage Prod., Inc.*, 157 F.3d 197, 199 (3rd Cir. 1998). Ultimately, the floating trust provides unpaid sellers with "an interest in the PACA trust assets superior to that of a perfected, secured creditor." *Id.*

Although the trust protections are not automatically applied to a seller of produce, the procedure to establish a PACA trust has become relatively routine. Nonetheless, the produce seller must comply with certain statutory requirements to obtain the benefits of the trust, one of which is to give written notice to the buyer of the intent to preserve the trust benefits. *See* 7 U.S.C. § 499e(c)(2). Sellers can accomplish this by including language in their "ordinary and usual billing or invoice statements." 7 U.S.C. § 499e(c)(4); *see* 7 C.F.R. § 46.46(f). The trust is "automatically created when the dealer accepts the goods so long as the supplier complies with the specific notice requirements." *Patterson Frozen Foods, Inc. v. Crown Foods Intern., Inc.*, 307 F.3d 666, 669 (7th Cir. 2002).

In the event of default by a buyer of produce under PACA, the seller can enforce liability against the buyer by either filing a complaint with the Secretary of Agriculture or filing suit in a

---

[3] A "floating" trust as established by PACA "means a buyer can use proceeds from the sale of one seller's produce to pay a different seller – or for any other purpose as long as the buyer maintains assets sufficient to pay his PACA liabilities." *Hughes*, 609 B.R. at 799 (citing 7 C.F.R. § 46.46(d)(1)). Further, PACA allows for and contemplates the commingling of the assets. *See* 7 C.F.R. § 46.46(b).

8

court of competent jurisdiction. 7 U.S.C. § 499e(b). In an action before the district court, the unpaid seller can recover from "not only the buyer but also from those controlling it." *Hughes*, 609 B.R. at 800 (citations omitted). Indeed, certain behaviors by the produce buyers may put the produce seller's recovery in jeopardy, such as the dissipation of trust funds which Congress expressly outlawed. 7 U.S.C. § 499b(4). When that occurs, the seller is entitled to bring an action in district court to enforce payment from the trust or the Secretary of Agriculture can file suit to "prevent or restrain dissipation of the trust." 7 U.S.C. § 499e(c)(5). Upon a showing of dissipation or threat of dissipation, a court can enter an order requiring the "PACA debtor to escrow its proceeds from produce sales, identify its receivables, and inventory its assets. [The court] should then require the PACA debtor to separate and maintain these produce-related assets as the PACA trust." *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 159 (11th Cir. 1990). When segregation of PACA assets is ordered, the buyer must segregate proceeds from *all* its unpaid produce sellers with a legitimate claim, as *each* unpaid seller is entitled to a pro rata share of the segregated funds. *Id.* (emphasis supplied).

### B.  Dischargeability Analysis

The Seventh Circuit has not expressly ruled on the question presented here. Courts in other circuits are as equally divided as courts in this circuit with respect to the treatment of PACA trusts. A majority agree with the position pressed by Royal Garden. *See, e.g.*, *Melon Acres, Inc. v. Villa (In re Villa)*, 625 B.R. 111 (Bankr. N.D. Fla. 2021); *Lundgren,* 503 B.R. at 717; *E. Armata, Inc. v. Parra (In re Parra)*, 412 B.R. 99 (Bankr. E.D.N.Y 2009); *A.J. Rinella & Co. v. Bartlett (In re Bartlett)*, 397 B.R. 610 (Bankr. D. Mass. 2008). Others adopt the more restrictive viewpoint urged

by Sanchez, which this court finds to be more in line with relevant Seventh Circuit jurisprudence on section 523(a)(4) generally.  *See Forrest*, 2021 WL 1784085 at *10[4]; *Hughes*, 609 B.R. at 789.

Arguments in favor of finding PACA debts potentially non-dischargeable under section 523(a)(4) rely in large part on the general definition of a trust.  In *Bolanos I,* a bankruptcy court in this district ruled in line with the minority position that PACA "does not create an arrangement akin to an express trust."  475 B.R. at 646.   Noting the lack of a requirement for segregation and the floating trust arrangement, in addition to the commercial nature of the arms-length buyer-seller relationship under PACA, the court found all of those factors to be inconsistent with a technical trust.  *Id.* at 646-47.  Rather, the *Bolanos I* court concluded the PACA trust "effectively functions as a lien, assuring payment for the goods shipped to and sold by the purchaser."  *Id.* at 646.

However, on appeal, the district court reversed on the grounds that a PACA trust satisfied the following factors that were required to establish a fiduciary relationship:

> (1) the creation of an identifiable trust res; (2) specific or affirmative fiduciary duties independent of any contractual relationship; (3) the imposition of real duties in advance of the breach or separate from any act of wrongdoing; and (4) a difference in knowledge or power between fiduciary and principal which . . . gives the former a position of ascendancy over the latter.

*See Bolanos II,* 2013 WL 7507846 at *3 (citations omitted).   The trust res was "explicitly defined and readily identifiable" under the federal PACA statute with delineated and enforceable fiduciary duties to support an express trust.  *Id.*  Further, the automatic creation of the trust upon proper notice to the buyer established an existence "regardless of any wrongdoing and before the dissipation, if any, of trust assets."  *Id.* at *4.  Moreover, the district court held PACA beneficiaries were akin to merchants incapable of monitoring the other's performance "that gave rise to an

---

[4] In light of the split of authority within that circuit, the *Forrest* bankruptcy court certified its order dismissing the section 523(a)(4) claim for direct appeal pursuant to 28 U.S.C. § 158(d) and Fed. R. Bankr. P. 8006(d).  The resulting appeal, No. 21-12133, is currently pending before the 11th Circuit.

imbalance of power" to also support an implied fiduciary relationship within the meaning of *Marchiando*. *Id.* at *4.

Similarly, in *Lundgren*, a bankruptcy court in the Western District of Wisconsin reached the same conclusion as the district court in *Bolanos II.* 503 B.R. at 717. That court also interpreted PACA as establishing a clearly defined trust res with regulations that assigned sufficient duties to the buyer to qualify as an express trust that arose upon receipt of the produce, before and independent of the creation of the debt, and further concluded that the nature of PACA transactions put the buyer in a position of ascendancy over the seller. *Id.* at 720–22. The *Lundgren* court found the majority position more persuasive as it reflected "the commercial realities embodied in both the PACA statute and its implementing regulations. . ." *Id.* at 722.

Along the same lines, the *Zois* bankruptcy court in this district had previously reasoned that a PACA trust creates a fiduciary relationship because it "arises upon the debtor's acceptance of the perishable goods from the seller . . . has an identity separate from any wrongdoing" and "the beneficiary of the PACA Trust is another merchant and may be incapable of monitoring the other's performance." 201 B.R. at 509.

And more recently, the *Villa* bankruptcy court in the Northern District of Florida departed from well-established precedent following the minority position in holding that "PACA trusts meet the requirements of express or technical trusts because the trust res must only be clearly defined, not segregated." 625 B.R. at 120.

On the other hand, the *Hughes* bankruptcy court in this district disagreed with and distinguished cases adopting the majority view as unconvincing primarily because they "analyze the issue inconsistently with the law in this circuit." 609 B.R. at 801. *Hughes* concluded that a PACA trust "does not bear any of the hallmarks of a trust . . . and so, does not fit bankruptcy's

11

strict and narrow concept of a fiduciary relationship." 609 B.R. at 800.  Pointing to Seventh Circuit case law, *Hughes* emphasized that the actual hallmarks of an express trust include: "segregation of funds, management by financial intermediaries, and recognition that the entity in control of the assets has at most bare legal title to them." 609 B.R. at 797 (citations omitted).  PACA did not satisfy any of these requirements and thus did not create an express trust. *Id.* at 800.

Specifically, the *Hughes* court found problematic the fact that PACA does not require the buyer to segregate produce or proceeds from other customer accounts, and even permits commingling of proceeds with non-trust assets. *Id.* Because no segregation is required, the seller does not continue to own his sold produce or sale proceeds. *Id.* Second, management by a financial intermediary is not required. *Id.* Accordingly, the *Hughes* court concluded PACA "simply has no formal separation and ownership rules that impose obligations of a fiduciary nature." *Id.*

Recently, the *Forrest* bankruptcy court in the Middle District of Florida, citing the Seventh Circuit's *McGee* decision,  emphasized the same point: "PACA simply has no formal separation and ownership rules generally associated with a technical trust." *Forrest*, 2021 WL 1784085 at *9.

Exactly where PACA trusts fit on the spectrum of fiduciary relationships is not entirely clear.  But in considering both the majority and minority positions, this court, like the *Forrest* and *Hughes* courts, "errs on the side of the 'strict and narrow' interpretation of § 523(a)(4)." *Forrest*, 2021 WL 1784085 at *10.  Simply put, not enough of the main attributes of the PACA relationship reach the level of an express trust or an implied fiduciary relationship.[5]

---

[5] Royal Garden has not argued that PACA creates an implied fiduciary relationship.  The adversary complaint and the summary judgment briefing focus solely on the express trust argument.  Nevertheless, this court agrees with *Hughes* and *Bolanos I* that PACA trusts are more akin to traditional commercial buyer-seller relationships than trust-trustee.

This court finds persuasive the reasoning of *Hughes* (which relied on *Bolanos I*). Under PACA, the trust "floats" and the "trustee" is permitted to commingle proceeds from sales with general funds. The trust res is therefore not defined. Segregation of PACA funds may be required, but only upon a showing of dissipation of funds. That suggests the trust does not actually come into existence until *after* a wrong is established. In other words, the requirement to segregate is triggered once a wrong is committed. PACA trusts, then, function more like a constructive trust than an express trust.

Furthermore, because segregation of funds and produce is not required, and the buyer may use the goods and any proceeds in any way that allows it to remain able to pay unpaid sellers, the produce seller does not maintain ownership of the produce or funds. *See* 7 C.F.R. 46.46(d)(1); *Hughes*, 609 B.R. at 799. Thus, the produce buyer holds bare legal title, falling short of another requirement to show or establish an express trust.

Royal Garden asserts that the imposition of special trust duties by PACA on buyers constitutes a sufficient alternative form of a "hallmark" of an express trust. Specifically, Royal Garden relies upon a PACA section titled "Unfair conduct," that lists certain activities a produce buyer produce shall not undertake, as evidence of the fiduciary duties that accompany the trust. That conduct includes:

- Engaging in or use any unfair, unreasonable, discriminatory, or deceptive practice in connection with the weighing, counting or in any way determining the quantity of perishable agricultural commodity received, bought, sold, shipped or handled. *See* 7 U.S.C. § 499b(1).

- Rejecting or failing to deliver in accordance with the terms of the contract without any reasonable cause any perishable agricultural commodity bought or sold or contracted to be bought, sold or consigned. *See* 7 U.S.C. § 499b(2).

- Discarding, dumping or destroying without reasonable cause, any perishable agricultural commodity received by such commission merchant. *See* 7 U.S.C. § 499b(3).

13

- Making any false or misleading statements in connection with any transaction involving any perishable agricultural commodity, or failing or refusing, without reasonable cause, to perform any specification or duty arising out of the transaction, or to fail to maintain the trust as required. *See* 7 U.S.C. § 499b(4).

It is true that those enumerated duties must precede a breach. But they merely reflect regulations governing commercial relationships, not true "trust" duties that arise before malfeasance can be alleged against the dealer. In sum, there is ultimately nothing special about the relationship or accompanying duties that elevates it to the level of required trust owed from a lawyer to his client or a director to shareholders. *See Berman*, 629 F.3d at 768. Fiduciary-like duties, standing alone, are not enough.

It is evident that Congress intended to provide special protections to agricultural producers when it created and amended PACA. But that does not necessarily mean the intent was also to have PACA function like a traditional trust relationship. Rather, given that the agricultural producer is provided with a bevy of tools to proactively prevent dissipation of funds, to prosecute actions against dishonest and fraudulent dealers, and to obtain a priority position in any bankruptcy distribution, it appears that PACA serves more as a collection device. As the Seventh Circuit cautioned in *Marchiando*, without requiring anything more than the announcement of a trust and the assignment of duties as the baseline to establish a fiduciary relationship, any legislature can deem a regulation or statute a trust, assign specific duties to that relationship, and "have it in their power to deny a fresh start to their debtors." 13 F.3d at 1116. That type of situation clearly falls outside the narrow purview of section 523(a)(4).

Finally, while a majority of courts have concluded that a PACA trust debt can be non-dischargeable, those decisions are unconvincing. They relied upon a different standard than the one mandated by this circuit. *See Hughes*, 609 F.3d at 801–02 (compiling cases). Much like the

14

*Bolanos II* and *Lundgren* decisions, these majority decisions look only for "(1) an identifiable trust res, (2) separate fiduciary duties, and (3) an existence prior to and without reference to the act creating the debt." *KGB Int'l, Inc. v. Watford (In re Watford)*, 374 B.R. 184, 190 (Bankr. M.D.N.C. 2007). As discussed above, the standard in this circuit requires "res definition, protection, and ownership in the beneficiary." *Bolanos I,* 475 B.R. at 646 n.2 (distinguishing *Watford* and similar decisions.) The minority position is more consistent with current Seventh Circuit precedent. Accordingly, because a PACA trust does not create a fiduciary relationship under section 523(a)(4) as a matter of law, Sanchez cannot be held liable for the Company's debt as a controlling person. Summary judgment will be granted for Sanchez on the section 523(a)(4) claim.

### III.     <u>Fraudulent Intent under 11 U.S.C. § 523(a)(2)(A)</u>

Since Sanchez also sought summary judgment on the section 523(a)(2)(A) claim, the court will address it. Royal Garden alleges in the adversary complaint that Sanchez continued to order goods even though he knew the Company was insolvent; thus, his representations were made with reckless disregard for the truth that renders the resulting debts non-dischargeable under section 523(a)(2)(A). Sanchez argued in his motion that Royal Garden lacked evidence of actual fraud and could not show *scienter* or intent to deceive. At most, Sanchez asserts, this is a breach of contract that does not rise to the level of fraudulent intent.

Section 523(a)(2)(A) excepts from discharge "any debt . . . for money . . . to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition." 11 U.S.C. § 523(a)(2)(A). To state a claim for actual fraud under section 523(a)(2)(A), "a creditor must allege that a fraud occurred, the debtor intended to defraud, and the fraud created the debt." *Wachovia Secs., LLC v. Jahelka (In re Jahelka)*, 442 B.R. 663, 668 (Bankr. N.D. Ill. 2010). Further, actual fraud under section 523(a)(2)(A) has been

15

defined as "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another." *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000).

A cause of action under false pretenses, false representation, or fraud requires that the defendant acted with "scienter, or intent to deceive" *Allen v. Freund (In re Freund)*, 714 F.App'x 595, 597 (7th Cir. 2018) (citations omitted). "Proof of intent to deceive is measured by a debtor's subjective intention at the time a representation was made." *Glucona Am., Inc. v. Ardisson (In re Ardisson)*, 272 B.R. 346, 357 (Bankr. N.D. Ill. 2001). But, because proof of fraudulent intent is rarely available, "the scienter requirement may be inferred from surrounding circumstances." *Sargis v. Aguilar (In re Aguilar)*, 511 B.R. 507, 512 (Bankr. N.D. Ill. 2014).

Here, it would be difficult for the court to determine Sanchez's intent directly from the pleadings that have been filed. He could have been legitimately ordering products to keep his business afloat and hoping to turn around a deteriorating situation. The court cannot ascertain intent simply from a review of the complaint, answer, and other supporting documents. Generally, that question is one based on credibility of the witness, and "credibility issues are to be left to the trier of fact to resolve on the basis of oral testimony *except* in extreme cases." *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998) (emphasis in the original). This is especially true in section 523(a) cases, such that "[w]hether a debtor possessed the requisite intent . . . is a subjective inquiry and generally, not suitable for determination by summary judgment." *Estate of Cora v. Jahrling (In re Jahrling)*, 510 B.R. 820, 829 (Bankr. N.D. Ill. 2014.) Accordingly, genuine issues of material fact remain with respect to Sanchez's intent to deceive that would preclude entry of summary judgment at this stage of the case with discovery incomplete.

16

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted as to the section 523(a)(4) claim and denied without prejudice as to the 523(a)(2)(A) claim.  This adversary proceeding is continued for a status hearing on January 14, 2022 at 9:30AM.


                                             ENTER:

Dated: December 13, 2021

                                             _LaShonda A. Hunt_
                                             LaShonda A. Hunt
                                             United States Bankruptcy Judge